SCHULER, Respondent, v. CITY OF MOBRIDGE, Appellant.
(184 N. W. 281.)

(File No. 4650.  Opinion filed August 31, 1921.)

1.  **Municipal Corporations—Personal Injuries—Damages Resulting From Falling on Slippery Sidewalk—Non-evidence of Plaintiff's Negligence, Presumption of Due Care.**

    In a suit to recover damages resulting from plaintiff's falling upon a very smooth and slippery sidewalk (no snow or ice or other obstacles being thereon), held, that in absence of evidence that plaintiff was walking in a careless or negligent manner, she is presumed to have been exercising ordinary care.

2.  **Same—City's Negligence Re Constructing Sidewalk, Though Well Built, Steel Trowel Used in Surfacing—Evidence of Numerous Other Falls Thereon, As Evidence of Negligence—Rule of Law Stated.**

    In said suit, while numerous witnesses testified undisputedly, that the walk was well made and of good material, yet, the walk being undisputedly very slippery and undisputed evidence showing that numerous people slipped and fell on the same piece of walk, the rule adopted in Smith v. Yankton, 23 S. D. 352, applies to effect that city's duty is to so construct walks that they may be reasonably safe for use of pedestrains passing over them under ordinary climatic conditions, that if there was faulty construction in the particular walk and it was so constructed as that under ordinary and under usual climatic conditions it was unsafe for persons traveling over it, city was negligent in its construction. So held, where a steel instead of a wooden trowel was used in surfacing the walk.

3.  **Same—City's Notice of Defective Condition—Condition Existing for Considerable Time In Business Locality, Presumption of Knowledge From Facts.**

    In suit for damages for injury resulting from plaintiff's fall upon defendant's sidewalk, it was unnecessary to prove fact of defendant's notice of defective condition of sidewalk; evidence showing that it had been built many months previous to action, that its condition had existed from time of construction, and that the particular walk was in business portion of town and much used; these facts being sufficient to impute knowledge of condition of walk to defendant's officers.

4.  **Same—Plaintiff's Previous Knowledge of Dangerous Condition— Properly Refused Instruction Re Imputing Contributory Negligence From Previous Knowledge.**

    In such suit, upon issue of plaintiff's previous knowledge of dangerous condition of walk, trial court properly refused an instruction that if plaintiff knew walk was dangerous and that it was doubtful whether she could travel upon it without acci-

dent, it was not consistent with ordinary care to attempt to pass over it, if she could take another safe and convenient way to destination, and that if she did so proceed and injury resulted she was guilty of contributory negligence barring recovery; there being no evidence that plaintiff knew walk was dangerous, though she had passed over it before but when it was covered with boards—yet this is immaterial, she still may not have realized degree of danger; and city's duty is as hereinbefore stated; and where constructed and maintained in condition in which this walk was shown to have been, and in absence of plaintiff's negligence, city is liable.

5. New Trial—Grossly Excessive Verdict, Non-reversal Re—Wife's Subsequent Inability to Properly Keep House, Continued Physician's Treatment, Effect Re Verdict—Prejudice.

New trial was properly refused where sought on ground of alleged grossly excessive verdict for $1950 resulting from plaintiff's fall upon a sidewalk; she being 56 years old, had always previous to injury enjoyed good health, had a husband and four children, but after injury suffered much pain to time of trial, and was still under physician's treatment—nearly a year and a half after accident—she being unable to do housework as she had done before; such facts failing to show verdict so grossly excessive as to indicate it was result of prejudice or passion.

6. Same—Rule Re New Trial for Excessive Verdict—Must be Unreasonable, Outrageous and Showing Passion, Etc.—Rule Stated—Jury's Duty.

Practically the universal rule applied to granting new trial because verdict is excessive, is (following Coleman v. Southwick 9 Johns. 45, 6 Ann. Dec. 253), that damages must be so excessive as to strike mankind as being unreasonable and outrageous, and such as manifestly show jury actuated by passion, partiality, prejudice or corruption, and unless flagrantly outrageous and extravagant court cannot draw the line, having no standard to ascertain excess; that jury and trial judge have better opportunity, etc., than appellate judges, to measure actual damages and what would compensate for injury; and jury, thus being possessed of facts and circumstances, must pass upon this issue as one of fact under appropriate charge re law; their finding should not be disturbed unless it comes within said rule; while if made reasonably to appear that verdict is excessive by reason of influence of passion and prejudice, it is trial court's sworn duty to set it aside and grant new trial.

Whiting, J., concurring in result.

Appeal from Circuit Court, Walworth County. Hon. Joseph H. Bottum, Judge.

Action by Mary M. Schuler, against the City of Mobridge, a Municipal Corporation, to recover damages for alleged injury to plaintiff from a defective sidewalk in defendant city. From a judgment for plaintiff and from an order denying a new trial, defendant appeals. Affirmed.

*Harry A. Brenner,* for Appellant.

*Julius Skaug,* for Respondent.

(2)  To point two, Appellant cited: Smith v. City of Yankton, 23 S. D. 358; Beltz v. City of Yonkers, 148 N. Y. 67.

Respondent cited: Smith v. Yankton, supra.

(3)  To point three, Respondent cited: Evans v. Iowa City, 125 Ia. 202, 100 N. W. 1112.

(4)  To point four, Appellant cited: Bohl v. City of Dell Rapids, 15 S. D. 627; Schaefler v. City of Sandusky, 33 O. St. 246.

POLLEY, P. J. This is an action for damages for injuries alleged to have been sustained by plaintiff by reason of a defective sidewalk on one of the streets of defendant city. Verdict and judgment were for plaintiff, and defendant appeals.

[1, 2] The sidewalk in question is made of cement, and appears to have been constructed as cement walks usually are, except that the surface thereof had been trowled with a steel trowel, instead of a wooden trowel, such as is generally used for that purpose. The result is that the surface of the walk is very smooth and slippery. Plaintiff undertook to walk across it, but when she stepped on it her foot slipped, and she fell and injured her leg, especially her knee, quite seriously. There was no snow or ice or other obstruction on the sidewalk at the time of this accident. There is no evidence that the plaintiff was walking in a careless or negligent manner; therefore she is presumed to have been exrcising ordinary care. The negligence, if any, on the part of the city, consisted solely in the manner in which the sidewalk was constructed. The city proved by a number of witnesses, and their testimony was not disputed, that the sidewalk in question was well made and of good material; that it is one of the most substantial sidewalks in the city. But this does not disprove the fact that it was very slippery, and the undisputed evidence shows that numerous people, both before and after plaintiff's accident, slipped and fell on this same piece of sidewalk. The facts in the

case bring it within the rule adopted by this court in Smith v. Yankton, 23 S. D. 352, 121 N. W. 848. In that case the following instruction was approved by this court:

"It is the duty of the city to so construct its sidewalks as that they may be reasonably safe for the use of pedestrians passing over them, under all ordinary climatic conditions which exist in this country. * * * If there was a faulty construction in this sidewalk at this point, and if the sidewalk was so constructed as that under ordinary and usual climatic conditions it was unsafe for persons traveling over it, then the city was negligent in so constructing it."

[3] It is contended by defendant that there is no evidence that the city had notice of the defective condition of this sidewalk. It was not necessary to prove this fact in this case. The evidence shows that the sidewalk in question had been built some time during the summer or fall of the year previous to the accident. It also shows that the condition complained of by plaintiff had existed from the time the walk was built. And the evidence shows that this particular piece of sidewalk was located in the business portion of the town, and was used as much or more than any other piece of sidewalk in the town. These facts and circumstances are sufficient to impute knowledge of the condition of the sidewalk to the officers of the defendant.

[4] It is contended by the city that the plaintiff knew of the dangerous condition before she went upon it, and therefore she herself was negligent, and for that reason is not entitled to recover, and upon that branch of the case defendant requested the following instruction:

"I instruct you that, if you find the plaintiff knew that the sidewalk was dangerous and that it was really doubtful whether she could travel upon it without accident, it was not consistent with ordinary care to attempt to pass over it, especially if she could take another safe and convenient way to her destination. And if she did so proceed, and injury resulted, she was guilty of contributory negligence, which bars her right of recovery."

[5] This instruction was refused, and such refusal is assigned as error. There is no evidence to warrant this instruction, and no error was committed in refusing it. There is no evidence to show that plaintiff knew the sidewalk was dangerous. It is

true that she had passed over it before, once only two days before the accident; but at that time the walk was covered with boards, and whether she had ever walked over it when it was not covered does not appear from the evidence, but this is not material. She may have walked over it without realizing how dangerous it really was. It is the duty of cities to so construct their sidewalks that they will be reasonably safe for people to walk over, and where they are constructed and maintained in the condition in which the evidence shows this sidewalk to have been from the time of its construction to the time of plaintiff's accident, and in the absence of negligence on the part of the plaintiff, the city is liable for damages resulting from such condition.

[6]   It is next contended that the verdict should be set aside and a new trial granted because the verdict is so grossly excessive as to clearly indicate that it is the result of prejudice or passion on the part of the jury. The verdict ($1,950) is liberal, to say the least; but under the evidence we do not feel that we would be warranted in setting it aside because excessive. The plaintiff at the time of the trial was 56 years old. Up to the time of the accident complained of she had always enjoyed good health. She had a husband and four children. She had always taken care of the children and done her own housework. As the result of the injury she was confined to her bed for two weeks. Her knee was badly injured by the fall. She suffered a great deal of pain, not only while she was so confined, but continuously thereafter until the time of the trial. She employed a physician at the time of the injury, and he was still treating her injury at the time of the trial—something like a year and a half after the accident. This physician testified that the injury probably was permanent. Plaintiff was not able to do her housework after the injury as she had done before. She was obliged to keep one of her daughters out of school to do the housework that she had been in the habit of doing before the injury. There was testimony on behalf of defendant to the effect that plaintiff was seen doing the work about the house about the same after the accident as before, and one or two witnesses testified to seeing her working in the field after the injury; but this was denied by plaintiff. This, as well as other matters brought out by the testimony, presented questions of fact, of which the jury was the sole judge.

[7]  What we believe to be practically the universal rule, applied to the granting of a new trial on the ground that the verdict is excessive, is stated in Coleman v. Southwick, 9 Johns. 45, 6 Am. Dec. 253, as follows:

"The damages, therefore, must be so excessive as to strike mankind, at first blush, as being, beyond all measure, unreasonable and outrageous, and such as manifestly show the jury to have been actuated by passion, partiality, prejudice or corruption.  In short, the damages must be flagrantly outrageous and extravagant, or the court cannot undertake to draw the line; for they have no standard by which to ascertain the excess."

"The jury and the trial judge have a much better opportunity than do the appellate judges to measure the actual damages suffered by the plaintiff and the amount which would compensate him for the injury.  They have an opportunity of seeing the plaintiff and to discern his manner of testifying, his intelligence and capacity, to note his physical condition, and many other living evidences bearing upon the issue, including all the attending circumstances, of the larger part of which the appellate court is deprived.  The jury, thus being in possession of all the facts and circumstances, is required to pass upon this issue as an issue of fact, under an appropriate charge of the court as to the law. Their solemn finding, returned into court and approved by the trial court, should not be disturbed by this court, unless it comes within the rule hereinbefore laid down.  The trial judge has not only the opportunity afforded the jurors to gain knowledge of the conditions of the plaintiff's injury and the amount which will compensate him, together with all the facts and circumstances surrounding his injury, but also has the opportunity of observing the jurors in considering said cause and of any outward feeling evidencing passion or prejudice that may be exhibited during the proceedings before him; and if it is made reasonably to appear that the verdict of the jury is excessive by reason of any influence of passion or prejudice, it is his sworn and solemn duty, as a trial court to set aside the verdict" and grant a new trial.  Railroad Co. v. De Vore. 43 Okl. 534, 143 Pac. 864, L. R. A. 1915F, 21.

And see note to Padrick v. G. N. R. Co., L. R. A. 1915F. 30.

Tested by the above rule, we cannot say that the verdict is

so unreasonable or excessive as to warrant a new trial on that account.

The judgment and order appealed from are affirmed.

WHITING, J., concurs in result.