### CHICAGO, M. & ST. P. R. CO. v. MASON et al.

Rev. Civ. Code, § 488, subd. 4, empowering any railroad to lay out its road, not exceeding 100 feet in width, and for the purpose of obtaining gravel to take as much land as may be necessary for the proper construction, operation, etc., of the road, authorizes a railroad to condemn land outside its right of way to obtain gravel for ballast, etc., where it has no other gravel nearer than 100 miles.

Under the laws of this state, the existence of the necessity for ex ercising the right of eminent domain, where it is first shown that the use is public, is not open to judicial investigation; the body having power to exercise the right being also empowered to determine the necessity.

In the absence of some constitutional or statutory provision to the contrary, the necessity of exercising the right of eminent domain is a political, and not judicial question; the legislative determination being conclusive, and the courts having no power to review unless so authorized.

While the legislature may itself determine the necessity for the exercise of the power to condemn, it may, unless prohibited by the Constitution, delegate the power to public officers, or to private corporations established to carry on enterprises in which the public are interested, and their determination that a necessity exists is conclusive; there being no restraint in this power except as to compensation.

A company or individual empowered to exercise the right of eminent domain may not appropriate more land than is necessary for its use, and the courts may prohibit excessive appropriation or the taking of land not within the scope of the purpose required.

While the courts may determine whether the use for which private property proposed to be taken under the power of eminent domain is in fact a public use or not, where a corporation exercises the right in good faith and without oppression, its discretion in the selection of land will not be interfered with by the courts.

In proceedings by a railroad to condemn land for a gravel pit, evidence of the value of the gravel and sand yer yard in connection with an estimate of the number of cubic yards on the land was inadmissible on the question of damages; the estimate being speculative only.

Where a railroad condemned land for a gravel pit, the measure of damages was the full market value of the land taken for any and all uses to which it might be put, in the light of present business conditions, and those that might be reasonably expected in the immediate future, together with such damages as the owner might suffer to the remaining portion of his farm by reason of the taking.

(Opinion filed, Sept. 3, 1909.)

Appeal from Circuit Court, Aurora County. Hon. Frank B. Smith, Judge.

Condemnation proceedings by the Chicago, Milwaukee & St. Paul Railroad Company against George Mason and others. From the judgment, said Mason appeals. Affirmed.

*H. F. Fellows,* for appellant. *Preston & Hannett* and *Chas. E. Vroman,* for respondent.

McCOY, J.  This is a proceeding instituted by the respondent,

Chicago, Milwaukee & St. Paul Railroad Company, a corporation, under the statute of this state, to condemn 34.8 acres of land belonging to the appellant, George Mason.  Respondent in its petition, in substance, alleges that it is a railway corporation organized under the laws of the state of Wisconsin, and for many years last past has owned, operated, and maintained lines of railroad within this state, and that one of these lines enters the state at its easterly boundary in the county of Lincoln, and extends westward through said county into and across the counties of Turner, McCook, Davison, Aurora, and so on westward; that as such railroad corporation it conducts and carries on a large and important traffic as a common carrier in the transportation of passengers and freight; that, in order to maintain, operate, and repair its roadbed and tracks in a safe condition for the transaction of its business, it is necessary that it should have gravel beds in order that it might be able to ballast its tracks and keep its roadbed in a safe condition for use; that its said line of railroad crosses the west half of the southwest quarter of section 8, township 103, range 66, in Aurora county, and that the appellant, George Mason, is the owner of said tract of land and of that part thereof lying north of the right of way of this petitioner, containing 34.8 acres; that now it is necessary to ballast with gravel its tracks upon its roadbed and to use gravel to keep its roadbed and tracks in a safe condition for a long distance along its said line both east and west of the place where its said right of way crosses the said land of the said George Mason; that it has no gravel nearer than 100 miles and more from said real estate, and that, in order to obtain a supply of gravel sufficient for its said use, the appellant desires, and it is necessary for it to take and appropriate and condemn, the whole of the said 34.8 acres of said land so owned by said Mason, and that it has determined that it is necessary to take the said tract of land for the said purpose; that the petitioner and the said defendant, George Mason, are unable to agree upon the terms or consideration for the transfer to this plaintiff of the said real estate, and that this petitioner says that by reason of its being invested by law with the right and privilege of taking and appropriating said property, and of damaging the same for the said purposes and uses hereinbefore

stated, it has determined to exercise the right of taking the said
described land and the whole thereof for the said purpose as pro-
vided by law, and to condemn all of the said 34.8 acres of said
land for the public use aforesaid as contemplated by the laws of
this state pertaining to eminent domain. The said cause was placed
on the calendar for trial, and, upon call of the case the defendant,
Mason, appeared and made the following motion: "Comes now the
defendant, George Mason, and moves the court to dismiss the pe-
tition of the plaintiff for the reason that the same does not state
facts authorizing the condemnation of the property sought to be
condemned." This motion was overruled, and the defendant duly
excepted. Evidence was then adduced by the petitioner tending to
substantiate the allegations of said petition, and also to show the
value of the said land sought to be condemned. The question of
the value of said land was submitted to a jury under instructions
of the court, and a verdict returned finding the damages for the
taking of said land to be $2,000, and that, upon the payment of said
amount, the plaintiff shall have the title to said land for the purposes
of obtaining gravel for use upon its railroad bed for ballast, and
also for keeping its roadbed in a safe and sceure condition for use.

From the judgment thus entered the defendant Mason, as ap-
pellant, brings the cause to this court by appeal, contending, first,
that under the law of this state respondent has no right or author-
ity under any circumstances to condemn the land in question which
lies outside of the right of way for the purposes alleged, but we
are of the opinion that subdivision 4, § 488, Rev. Civ. Code, which
provides that a railway corporation shall have power to lay out
its road not exceeding 100 feet in width, and to construct the
same, and for the purposes of obtaining gravel to take as much
land as may be necessary for the proper construction, operation,
and security of the road, sufficiently authorizes a railway corpora-
tion to condemn land for the purpose of obtaining gravel under
the allegations and evidence in the case. The appellant further
contends that the evidence in this case is wholly insufficient to show
that the necessity exists, or has been shown to exist, for the con-
demnation, but we are of the opinion that in this contention the
appellant is in error, and that the ndings of the circuit court are

fully sustained by the evidence.  We are of the opinion that, under the law of this state, the question of the existence of the necessity for exercising the right of eminent domain, where it is first shown that the use is public, is not open to judicial investigation and determination, but that the body having power to exercise the right of eminent domain is also invested with power to determine the existence of the necessity; that by the statutes of this state the Legislature, in whom this power originally existed, has delegated the power determining the necessity to those bodies authorized to exercise the right of eminent domain.  In the absence of some constitutional or statutory provision to the contrary, the necessity and expediency of exercising the right of eminent domain are questions political, and not judicial.  The determination of those questions belongs to the sovereign power.  The legislative determination is conclusive, and the courts have no power to review, unless so authorized.  While the Legislature may itself exercise the right of determining the necessity for the exercise of the power to condemn, it may, unless prohibited by Constitution, delegate the power to public officers or to private corporations established to carry on enterprises in which the public are interested, and their determination that a necessity exists is conclusive.  It is generally held that, in the absesnce of any statutory provision submitting the question of necessity to the courts, the decision of the question lies with the body to whom the state has delegated the authority to take, and there is no restraint in this power except as to compensation.  15 Cyc. 629; Smith v. Gould, 59 Wis. 631, 18 N. W. 457; Gibson v. Cann, 28 Colo. 499, 66 Pac. 879; Waterbury v. Platt, 76 Conn. 435, 56 Atl. 856; O'Hare v. Chicago Railway Co., 139 Ill. 151, 28 N. E. 923; Barrett v. Kemp. 91 Iowa 296, 59 N. W. 76; Eastern Ry. Co. v. Boston Ry. Co., 111 Mass. 125, 15 Am. Rep. 13; State v. Rapp, 39 Minn. 65, 38 N. W. 926; In re N. Y. Cent. Ry. Co., 77 N. Y. 248.  It is never permissible for a company or individuals invested with the power to exercise the right of eminent domain to appropriate more land than is necessary for its use, and the courts have power to prohibit excessive appropriation, or the taking of land not within the scope of the purpose required, and the courts have power to determine whether

the use for which private property proposed to be taken under authority authorized by Legislature is in fact a public use or not. 15 Cyc. 632; Smith v. Gould, supra; St. Louis v. Griswold, 58 Mo. 175. Where a duly incorporated company authorized by statute to take land for public use exercises the right of eminent domain in good faith and is not guilty of oppression, its discretion in the selection of land will not be interfered with by the courts. Postal Tel. Co. v. Oregon Short Line, 23 Utah, 474, 65 Pac. 735, 90 Am. St. Rep. 705; Piedmont Cotton Mills v. Georgia Ry. Co., 131 Ga. 129, 62 S. E. 52. It is a matter of common knowledge that gravel may be used to advantage in maintaining a railway track and keeping it in proper condition for traffic, and the Legislature of this state has delegated to the railway corporations by section 488, Rev. Civ. Code, power to take land for the purpose of obtaining gravel, and the railway company thus empowered is the judge of the conditions rendering it necessary to use gravel for such purpose, and we are of the opinion that the amount of land taken in this instance is not excessive, and that there is nothing in the taking or selection of the locality for the condemnation from which fraud or oppression might be inferred. On the trial the appellant offered to prove the value per yard of gravel and sand as a method of arriving at the value of the land, taken in connection with an estimate of the number of cubic yards of gravel and sand on the 34.8 acres of land in question. The offer was objected to as immaterial, and not a proper measure of damage, and to the ruling of the court sustaining the objection the appellant excepted, and now urges that such ruling was error. But we are of the opinion that the objection was properly sustained. The estimate as to the number of cubic yards of sand and gravel is speculation only, and would afford no true or reasonable rule as to the value of the land. The jury were instructed that they should allow the appellant the full market value of the 34.8 acres of land taken for any and all uses to which said land might be put in view and in the light of present business conditions, and those that might be reasonably expected in the immediate future, together with such damages as appellant might suffer to the remaining portion of his farm by reason of having the 34.8 acres taken therefrom, and it occurs to

us that the learned trial court properly submitted the question of damage to the jury.

Finding no error in the record, the judgment of the circuit court is affirmed.